## Powell v. Commonwealth.

(Decided March 22, 1929.)

624

L. D. LEWIS for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the trial of an indictment in the Leslie Circuit Court accusing him of willfully murdering James Griffey, the appellant, Millard Powell, was by the verdict of the jury convicted of voluntary manslaughter, and punished by confinement in the penitentiary for a period of 21 years. His motion for a new trial contained a number of the grounds specified in the Criminal Code, but in this court appellant's counsel argues but one ruling of the court as a ground for reversing the judgment, and which relates to one statement of defendant in giving his testimony at the trial.

The homicide with which appellant is charged occurred in Leslie county on the public road running up Hell-for-Certain creek, late one Saturday afternoon. No one was present but decedent and appellant. On Wednesday of that week, the two went from that neighborhood, wherein they each resided, to visit appellant's mother in Clay county. They walked in making that trip, and did not arrive there until about 8 o'clock on Thursday morning preceding the day of the homicide. They left there on their return trip, traveling in the same manner, on Saturday morning, and a number of witnesses saw them en route, including some of their neighbors and acquaintances, a number of the latter having met appellant and deceased some three-quarters of a mile up Hell-for-Certain creek from the place of the homicide. Some short while thereafter, neighbors residing nearby heard two loud pistol shots, and later a pedestrian on the road traveling up the creek found the dead body of deceased by the side of the road. He had received two fatal wounds; one being a shot in the neck, and the other one through one corner of an eye, the bullet passing through his head. His brains were scattered around the point where his head lay on the ground, and he still had

his hat on, with defendant's hat under his right leg. During the trip to Clay county, and on the return therefrom, appellant carried a 45 caliber pistol, but deceased was wholly unarmed, not even having a pocketknife, and which fact was proven by a thorough search made immediately after his dead body was found. Deceased, however, did carry, while making and returning from the Clay county trip, a pair of saddlebags in which was a supply of moonshine whisky, and which both he and appellant were said to have freely imbibed. Especially was that true on the return trip, which was made almost entirely in a steady falling rain. The last persons who saw them on that road testified that both of them were intoxicated, and that deceased was so much so that he reeled as he walked.

Appellant took the stand in his own behalf and, in telling how he came to kill deceased, said:

"Well, we went down Hell-for-Certain, and after we passed those boys at the mouth of Bullskin Fork Jim said to me, says 'Sam Osborne has been meddling with my woman—'

"By the Court: I don't think that is competent and you will not consider it.

"I told him 'Less go home and not have no trouble with nobody. I said let's go on home we have been out a right smart while and we haven't had no trouble yet with nobody, and we was getting pretty close home now and let's go on in without any trouble and seem like he flew mad. I said 'Jim I am a good friend to you and I have got nothing against you at all, let's not have no trouble' and I commenced then trying to get loose from him, he had walked up by the side of me and had his hand on my shoulder and I kindly tried to get out of the road to get loose from him but he held to my shoulder with one hand and I couldn't get loose from him and I kept trying to back from him all the time, and he grabbed at me and tried to get hold of the pistol, when he grabbed at me he jerked me around someway, and jerked me around in front of him and when he jerked me around I got my pistol and he made a glome at me with one hand to grab me by the top of the head and I fired about that time and he fell and I missed my hat. He must have took my hat as he went, after he fell my hat was gone."

He then testified that deceased never got hold of his pistol, but only tried to do so, and, while deceased was so engaged, witness (appellant) shot him. He was then asked: "Why did you shoot there? A. I knowed when he got the pistol he would kill me, or I thought it." And he then said that what he had stated, as is above inserted, was all that occurred. It was furthermore proven that, when the two started on their trip to Clay county, deceased said to his wife, "Annie, look at me good you may never see me back;" and that appellant then answered, "No, I will shoot his G—— d—— brains out before he gets back." But appellant denied making that statement.

Going back now to the only point argued for a reversal of the judgment, we find that it consists in the remark made by the court with reference to the statement of deceased, made as testified to my appellant at the time and place of the homicide, that "Sam Osborne has been meddling with my woman," and to which the court stated, as contained in the above excerpt, "I do not think that is competent and you will not consider it."

It will be first observed that no objections or exceptions were taken to that statement of the court, and for that reason alone the error, if one, is not available to appellant on this appeal. But we are by no means convinced that the complained-of ruling of the court was improper, or, if so, not to such an extent as to create reversible error. It will be perceived that the excluded statement, attributed to deceased, expressed only his motive for wanting to obtain the possession of appellant's pistol, and it contained no threat even against Osborne. It was in proof that the two would soon pass Osborne's residence, and most likely the deceased concluded that, because of the illicit relations to which he referred, a conflict might arise between him and Osborne, and that he wanted to be prepared to defend himself against any attack that Osborne might offer. There was certainly no threat, nor any expression of hostility, towards appellant contained in the excluded statement, and at most it contained only an implied one against a third party.

In one view of the case it was more favorable to defendant for the statement to be excluded than to be admitted, since, if it did not occur, or if it did occur and the jury was not permitted to receive it, then the jury might conclude that the appellant had the right to infer that de-

ceased wanted the pistol to inflict harm on him instead of some other person. At any rate, it is impossible for us to see wherein the expressed motive for the actions of deceased on that occasion was relevant, unless it contained a threat against appellant or an expression of anger towards him. According to defendant's testimony, deceased at the time he was shot was attempting to do him no harm, nor had he expressed any animosity towards appellant, and there was no foundation for the latter believing that he himself would be harmed if deceased obtained his pistol, and appellant's version of the killing contains no elements of self-defense. He was neither in actual nor threatened danger. Neither did the facts justify him in the exercise of a reasonable judgment to so believe. Since, therefore, there existed no actual danger of the infliction of death or great bodily harm by deceased on appellant, and the facts did not authorize him to so believe in the exercise of a reasonable judgment, there was no ground upon which the jury could acquit him under his right of self-defense.

The testimony of appellant, in connection with that of other witnesses describing the intoxicated condition of deceased, convinces us that the homicide was wholly inexcusable, and appellant is to be congratulated rather than commiserated on the punishment inflicted. Deceased was almost crazy drunk at the time defendant shot and killed him, and so much so that he was physically unable to take appellant's pistol from him, and, according to our view of the testimony, the homicide was without justification.

But it is argued that the exclusion of the testimony complained of destroyed the ground for an argument to the jury by counsel for appellant that deceased was jealous of Osborne, and which argument it is claimed would have had favorable effect upon the jury. But we are unable to grasp that reasoning, nor are we able to discern that it would have produced a favorable impression with the jury when the jealousy, if it did exist, did not relate to appellant but to a third person.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.